# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| Estate of ERIC JACK LOGAN, Deceased, | ) |
| Plaintiff, | ) )  ) |
| v. | ) CASE NO. 3:19-CV-495-DRL-MGG |
| CITY OF SOUTH BEND, *et al.*, | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Pending before the Court are three motions: Plaintiff's Motion to Compel Compliance and Impose Sanctions [DE 18]; Plaintiff's Motion to Extend Discovery [DE 39]; and Defendants' Motion for Extension of Expert Disclosure Deadline [DE 44]. Each is addressed below.

### I. RELEVANT BACKGROUND

Plaintiff filed a complaint initiating this civil action on June 26, 2019. The case arises from the shooting death of Eric Jack Logan by South Bend police officer Ryan O'Neill on June 16, 2019. Plaintiff invokes 42 U.S.C. § 1983 bringing claims against Officer O'Neill for excessive deadly force in violation of the Fourth and Fourteenth Amendments to the United States Constitution and for equal protection violations under the Fourteenth Amendment. Plaintiff also claims that the City of South Bend ("the City") is liable for the shooting under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

Based on the parties' joint Rule 26(f) Report of Parties' Planning Meeting [DE 15], the Court issued its Rule 16(b) Scheduling Order on October 24, 2019, incorporating most of the agreed discovery-related deadlines proposed by the parties. As relevant here, the Court adopted the following case management deadlines: January 31, 2020, for Plaintiff's expert disclosures; March 2, 2020, for Defendants' expert disclosures; April 30, 2020, for completion of mediation; May 29, 2020, for the close of all discovery; and June 30, 2020, for filing dispositive motions. [DE 17]. Just one day after the Court issued its Scheduling Order, Plaintiff issued subpoenas to Body Worn by UTILITY ("UTILITY"), a body camera company; Central High Apartments; the City of South Bend Mayor's Office; the Democratic National Committee ("DNC"); the Fraternal Order of Police Lodge #36; Memorial Hospital; the Saint Joseph County Metro Homicide Unit ("SJMHU"); RadioReference.com LLC; the St. Joseph County Coroner; St. Joseph County Communications; the St. Joseph County Prosecutor Office ("SJCPO"); and the Allen County Coroner. [DE 18-1]. Plaintiff found the responses to the UTILITY [DE 18-1 at 7], South Bend Mayor's Office [DE 18-1 at 12], SJCPO [DE 18-1 at 45], and SJCMHU [DE 18-1 at 29] subpoenas inadequate and filed the instant motion to compel on December 6, 2019.

Plaintiff intentionally pursued the non-party subpoenas before serving any written discovery on Defendants in an attempt to narrow the scope of discovery to be directed to Defendants. In the meantime, a Special Prosecutor was appointed to investigate the shooting and determine if criminal charges should be brought against Defendant O'Neill. Additionally, Plaintiff spent time between November 21, 2019, and

2

December 16, 2019, attempting—unsuccessfully—to intervene in a state court case involving the question of whether the "Boykins" South Bend police tapes could be released ("the Tapes Case"). Plaintiff's counsel then attended oral argument before the state court on January 22, 2020, based on the belief that the contents of the Tapes Case have "a direct bearing on Plaintiff being able to support her *Monell* allegations alleged in this pending lawsuit." [DE 39 at 2, ¶ 7].

While Plaintiff pursued non-party subpoenas and the Tapes Case, Defendants served written discovery on Plaintiff. Plaintiff served responses to Defendants' requests on January 28, 2020, after the initial response period had already passed. Defendants found Plaintiff's responses inadequate but indicate they are still working with Plaintiff to resolve the disputes without Court intervention.

While Plaintiff's motion to compel has been under consideration by this Court, Plaintiff's expert disclosure deadline passed on January 31, 2020. Contending that a resolution of its motion to compel was needed before an expert could prepare a report, Plaintiff filed the instant motion to extend discovery on January 31, 2020. On February 28, 2020, Defendants then filed a motion to extend their expert disclosure deadline, which was looming on March 2, 2020.

## II. ANALYSIS

### A. Motion to Compel [DE 18]

"[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Any such motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make

3

disclosure or discovery in an effort to obtain it without court action." *Id.* Under this Court's Local Rules, such certification much be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R. 37-1(b).

When addressing motions to compel, the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *see also Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496. The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006).

Through the instant motion to compel, Plaintiff challenges the responses to subpoenas issued to (1) the City of South Bend Mayor's Office [DE 18-1 at 12]; (2) SJCPO [DE 18-1 at 45]; (3) UTILITY [DE 18-1 at 2]; and (4) SJCMHU [DE 18-1 at 29]. For the reasons discussed below, the Court denies Plaintiff's motion to compel—with prejudice in part and without prejudice in part.

   1.   **South Bend Mayor's Office**

Plaintiff's subpoena is expressly directed to "City of South Bend Mayor's Office Attention Mayor Pete Buttigieg" and commands production of "[a]ny and all

4

communications between Pete Buttigieg and/or his Presidential campaign staff or committee members and the Democratic National Committee regarding the police-involved shooting death of Eric Logan on June 16, 2019." [DE 18-1 at 12]. Before serving the subpoena on the City's counsel, Plaintiff's counsel served a notice of the subpoena on the City's counsel. [DE 21-1 at 2]. The City's counsel promptly responded to the notice indicating to Plaintiff's counsel that a subpoena was not the appropriate procedural mechanism to use in relation to a party. The City's counsel explained that the Mayor's Office is part of the City, a defendant in this action, such that the requests in the subpoena would be considered requests for production under [Fed. R. Civ. P. 34](). [DE 21-1 at 1]. With no reply to the City's counsel and without amendment to the subpoena, Plaintiff served the subpoena, as noticed, on the City's counsel. [DE 18-2].

In response, the City treated the subpoena as a request for production of documents and objected to producing the requested information for several reasons. First, the City indicated that it has no control over the information requested. The City explained that the requested communications were not related to Pete Buttigieg's function as the City's chief executive because they were made in his individual capacity as a presidential candidate. Second, the City stated that the request sought information from a time period not relevant to the pending issues in this case. Third, the City contended that the requested information is not relevant or proportional to the needs of this case.

Without having conferred with the City about its objections, Plaintiff filed the instant motion to compel. As a preliminary matter, Plaintiff concedes that it did not file

5

the separate certification required under Local Rule 37-1 but correctly notes that a summary denial is not mandated by the Local Rule. *See Lovato v. Wal-Mart Stores, Inc., CAUSE NO. 4:16-CV-84-JTM-PRC, 2017 WL 2274684, at \*1 (N.D. Ind. May 25, 2017).* Even if the Court were to excuse Plaintiff's procedural misstep, its motion to compel as to Mr. Buttigieg fails on the merits.

Plaintiff's arguments are thin and therefore weak, at best. Plaintiff acknowledges that the requested communications are not related to Mr. Buttigieg's function as the Mayor of South Bend. Plaintiff's only argument in support of its subpoena is a single sentence stating that "this [requested] information should be discoverable through subpoena as it is reasonably calculated to lead to admissible evidence with respect to the shooting death of Eric Jack Logan."[1] [DE 18 at 2]. Plaintiff does not discuss any facts or legal authority. Without more, Plaintiff has not demonstrated even a possible nexus between Mr. Buttigieg's campaign communications and the Logan shooting.

Plaintiff's argument is flawed in other ways as well. Plaintiff essentially agrees that it wants Pete Buttigieg, the individual—not the City of South Bend Mayor's Office—to produce the requested communications. Yet Plaintiff explicitly addressed the subpoena to the City, a defendant in this action. Therefore, the City properly construed

---

[1] Plaintiff's assertion mirrors language from a previous version of Fed. R. Civ. P. 26(b)(1) defining the scope of discovery, which does not represent completely the current Rule. Since December 1, 2015, Fed. R. Civ. P. 26(b)(1) has stated:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

the subpoena as a request for production of documents under Fed. R. Civ. P. 34 and counted the request toward the limit for such requests to parties set forth in this Court's Scheduling Order.

Moreover, no person or party, including the City, can produce what it does not control or possess. *See* Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request within the scope of Rule 26(b) to produce [requested information] in the responding party's possession, custody, or control."). The City was neither part of Mr. Buttigieg's presidential campaign nor given access to the DNC's communications. Therefore, it cannot produce what Plaintiff is requesting even if it were deemed relevant and proportional under Fed. R. Civ. P. 26(b)(1), a conclusion the Court is unable to reach given Plaintiff's ineffectual briefing and arguments here.

And lastly, Plaintiff has not shown that the only source for the requested communications, should they be deemed relevant and proportional, is the Mayor's Office. Nor can it because Plaintiff has served an almost identical subpoena on the DNC. Specifically, the DNC subpoena requests "[a]ny and all communications of the Democratic National Committee staff or committee members related to the 2020 Presidential campaign with Pete Buttigieg regarding the police-involved shooting death of Eric Logan on June 16, 2019." [DE 18-1 at 16]. And no dispute as to the DNC subpoena has been presented to this Court through Plaintiff's instant motion to compel or any challenge under Fed. R. Civ. P. 45(d) by the DNC.[2] Therefore, the Court can only

---

[2] The Court notes, however, that both of Plaintiff's requests for campaign communications are likely overbroad. Both requests fail to define the timeframe of the requested communications leaving the Court unable to discern the relevance of the communications at issue.

assume that the DNC has produced the requested communications to Plaintiff's satisfaction. If not, Plaintiff has procedural mechanisms available to him to challenge any perceived deficiencies in its production.

Accordingly, the Court denies Plaintiff's motion to compel as to Defendant, City of South Bend with prejudice.

### 2. SJCPO & SJCMHU

Plaintiff's subpoenas to SJCPO and SJCMHU request almost identical information. Plaintiff asked SJCPO to produce "[a]ny and all case files, documents, photographs, videos, correspondence and investigation reports or materials related to the investigation of the police-involved shooting of Eric J. Logan . . . on June 16, 2019." [DE 18-1 at 45]. Simultaneously, Plaintiff asked SJCMHU to produce "[a]ny and all documents, photographs, videos, written notes, reports and investigation reports or materials related to the investigation of the police-involved shooting of Eric J. Logan . . . on June 16, 2019." [DE 18-1 at 29]. Both SJCPO and SCJMHU served Plaintiff with almost identical objections to their respective subpoenas. In its motion to compel, Plaintiff adopted the same argument as to both SJCPO and SJCMHU. As an arm of the SJCPO, SJCMHU also joined in SJCPO's brief in opposition to Plaintiff's motion to compel. In this analysis, the Court will reference SJCPO and SJCMHU collectively as "SJCPO."

In objection letters to Plaintiff, SJCPO explained that the only document responsive to the subpoenas was the investigative case file of the Special Prosecutor. [DE 24-2 at 1; DE 27-1 at 1]. As of November 2019, when SJCPO objected to the

8

subpoenas, the Special Prosecutor's investigation was still ongoing. As a result, SJCPO argued that the investigatory privilege, the deliberative process privilege, and Fed. R. Evid. 106 protected the requested information from disclosure at that time. Nevertheless, SJCPO reiterated to Plaintiff that "the Special Prosecutor is willing to produce discoverable portions of the investigative case file after the investigation is closed, which is estimated to be complete by February 2020." [DE 24-2 at 2; *see also* DE 27-1 at 2 (reflecting the same message)]. Plaintiff rejected SJCPO's offer of delayed production and filed the instant motion to compel.

On March 6, 2020, before this Court could resolve the instant motions, the Special Prosecutor announced his findings. Christian Sheckler & Marek Mazurek, *Former South Bend Cop 'Justified' in Eric Logan Shooting But Charged for Soliciting Prostitute*, SOUTH BEND TRIBUNE (Mar. 7, 2020).[3] As a result, SJCPO can now supplement production in response to the subpoenas as promised. *See* Fed. R. Civ. P. 26(e). Regardless of what SJCPO ultimately produces, however, its arguments here as to investigatory privilege and deliberative process privilege are well taken with regard to investigative materials not incorporated into the Special Prosecutor's final investigation file.

The law enforcement investigatory privilege is not absolute but exists "to prevent disclosure of law enforcement techniques and procedures, to preserve confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an

---

[3] https://www.southbendtribune.com/news/local/former-south-bend-cop-justified-in-eric-logan-shooting-but/article_8264b912-5fc0-11ea-a6fd-17e511e49140.html.

investigation." *Szany v. City of Hammond*, No. 2:17-CV-74-PPS-JPK, 2019 WL 3812492, at *1 (N.D. Ind. Aug. 14, 2019) (internal quotations and citations omitted). Indeed, disclosure of investigative materials before an investigation is complete "could certainly have a chilling effect on the willingness of [individuals] to participate openly in such investigations." *Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 565–66 (S.D. Ind. 2004). However, the privilege "can be overridden in appropriate cases by the need for the privileged materials." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). In determining whether to allow disclosure of investigative materials, a court must balance "the need of the litigant who is seeking privileged investigative materials . . . against the harm to the government if the privilege is lifted . . . ." *Id.* In so doing, the Court essentially mediates between a plaintiff's "desire to expedite [its] civil litigation and the government's conduct of its criminal investigation[, which] is not a proper judicial role." *Id.* Accordingly, there is a strong presumption against lifting the privilege. *Id.* Courts weigh ten factors when determining whether the investigatory privilege applies.[4] *Szany*, 2019 WL 3812492, at *1–*2 (internal citations omitted).

---

[4] Those ten factors include:
    (1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
    (2) The impact upon persons who have given information of having their identities disclosed;
    (3) The degree to which governmental self evaluations and consequent program improvement will be chilled by disclosure;
    (4) Whether the information sought is factual data or evaluative summary;
    (5) Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
    (6) Whether the investigation has been completed;
    (7) Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
    (8) Whether the plaintiff's suit is nonfrivolous and brought in good faith;

Here, SJCPO has demonstrated that the government will be harmed if the investigatory privilege is lifted, at least as to investigative materials not included in the Special Prosecutor's final investigation file. Given the high-profile nature of both the officer-involved shooting at the heart of the investigation and this case itself, disclosure of non-final materials could discourage relevant individuals from providing candid information as part of other ongoing investigations related to the shooting. Moreover, disclosure of non-final materials considered during the Special Prosecutor's investigation could reveal law enforcement techniques and procedures as well as jeopardize sources, witnesses, and law enforcement personnel. Plaintiff has provided nothing that shows that this case turns on the non-final materials or are even relevant to this case. Therefore, the investigatory privilege applies to any materials not incorporated into the Special Prosecutor's final investigation case file.

Plaintiff similarly fails to rebut SJCPO's objection based on the deliberative process privilege. In fact, Plaintiff makes no reference to SCJPO's deliberative process objection in its motion to compel or the subsequent reply brief. "Failure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *see also Wojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (explaining that the plaintiff's "failure to offer any opposition to [the defendant's] . . . argument constituted a waiver"). As such, Plaintiff arguably waived any argument

---

(9) Whether the information sought is available through other discovery or from other sources; and
(10) The importance of the information sought to the plaintiff's case.
*Szany*, 2019 WL 3812492, at *1–2 (citing *Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 206 (S.D. Ind. 2012); *accord Anderson*, 220 F.R.D. at 563-64; *Jones v. City of Indianapolis*, 216 F.R.D. 440, 444 (S.D. Ind. 2003)).

11

against SJCPO's assertion of deliberative process privilege. Regardless of any waiver, however, the deliberative process privilege applies to at least parts of the materials not ultimately included in the Special Prosecutor's final investigation case file.

The deliberative process privilege "protects communications, such as advisory opinions, recommendations and deliberations, that are part of the decision-making process of a governmental agency." *Indianapolis Minority Contractions Ass'n, Inc. v. Wiley*, No. IP 94-1175-C-T/G, 1998 WL 1988826, at *8 (S.D. Ind. May 13, 1998), *aff'd sub nom. Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999) (citing *Nat'l Labor Relations Bd v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993). As state employees, county prosecutors—including SCJPO—and special prosecutors engage in deliberative conduct while conducting investigations. *See generally* Ind. Code ch. 33-39-1 *et seq*. Consequently, deliberative materials not incorporated into the Special Prosecutor's final investigation case file are protected from disclosure.

Lastly, Plaintiff has also waived any argument to rebut SJCPO's invocation of the rule of completeness codified in Fed. R. Evid. 106. Fed. R. Evid. 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." While SJCPO's Rule 106 objection was well taken at the time it was made, the objection no longer applies because the Special Prosecutor's investigation and the resulting case file is now complete.

12

In short, the recent conclusion of the Special Prosecutor's investigation has negated Plaintiff's weak arguments for production of investigative materials sought through subpoenas to SJCPO and SJCMHU.[5] Therefore, the Court denies without prejudice Plaintiff's motion to compel as to the SJCPO and SCJMHU subpoenas. SJCPO and SJCMHU shall jointly produce discoverable portions of the final investigative case file as promised. Should Plaintiff identify particular deficiencies in SJCPO's production, it may pursue any and all procedural options available under the Federal Rules of Civil Procedure and this Court's Scheduling Order after conferring with SJCPO's counsel in an attempt to resolve any dispute that may arise before seeking the Court's assistance. *See* Fed. R. Civ. P. 37(a); N.D. Ind. L.R. 37-1.

### 3. BodyWorn by UTILITY

In the subpoena served upon UTILITY, Plaintiff made four requests for documents related to body cameras the City or its Police Department purchased from UTILITY. UTILITY objected to all four requests as "overbroad, not proportional to the needs of the case, unduly burdensome, [and] beyond the scope of permissible discovery under Fed. R. Civ. P. 26 and under Fed. R. Civ. P. 45 for non-parties." [DE 18-4 at 3–4]. UTILITY also asserted that producing body camera videos sought through two of the four requests "would violate Indiana law, including, without limitation, Indiana Code Sections 5-14-3-1 *et seq.*" [DE 18-4 at 3]. Additionally, UTILITY stated that one of the

---

[5] South Bend Mayor James Mueller recently sent a letter to the Special Prosecutor asking for public release of evidence from the investigation of the Logan shooting. Marek Mazurek, *South Bend Mayor Wants Prosecutor to Publicly Release Evidence from Eric Logan Shooting*, SOUTH BEND TRIBUNE (Mar. 15, 2020), https://www.southbendtribune.com/news/local/south-bend-mayor-wants-prosecutor-to-publicly-release-evidence-from/article_ed2798ea-6566-11ea-8297-3ba0ba95aea7.html.

13

requests is unintelligible as drafted and appears to seek the City's internal correspondence that is unavailable to UTILITY. [DE 18-4 at 4]. In support of its motion to compel challenging UTILITY's objections, Plaintiff merely states, without support, that UTILITY has asserted boilerplate objections and "does not meet its burden of demonstrating why the requested records should not be produced." [DE 18 at 3]. UTILITY filed no response to Plaintiff's motion to compel.

Typically, the Court is inclined to grant such an uncontested motion. *See* N.D. Ind. L.R. 7-1(d)(5). However, in this case, Plaintiff has not provided information from which the Court could determine whether UTILITY met its burden to justify its objection. In other words, Plaintiff has not established even a *prima facie* case that UTILITY's objections are unfounded. Furthermore, neither Plaintiff nor UTILITY has provided any information from which the Court might tailor Plaintiff's requests proportionally to the needs of this case. In fact, a review of Plaintiff's subpoena requests suggests that UTILITY's objections seem well founded.

In its first request, Plaintiff asks UTILITY to produce "[a]ny and all correspondence, documents, manuals, trainings, photographs, videos, or materials related to the body cameras purchased by the City of South Bend or South Bend Police Department at any time." [DE 18-1 at 5]. This request is widely overbroad in scope and time. All body cameras purchased at any time by the City or its Police Department are not relevant to the Logan shooting. Thus, this request is not proportional to the needs of this case. Arguably, some materials may be relevant and proportional but Plaintiff's

overbroad drafting of this request make it impossible for UTILITY or this Court to tailor the request appropriately.

Plaintiff's second requests asks UTILITY to produce "[a]ny and all videos uploaded to and/or stored by BodyWork by UTILITY for June 16, 2019." [DE 18-1 at 5]. The Court needs not determine whether production of these videos violates Indiana law—although it likely does—because this request is also dramatically overbroad. Plaintiff does not specify the UTILITY client whose videos from June 16, 2019, UTILITY is being asked to produce. Moreover, any such videos related to the Logan shooting would necessarily be part of the various investigations to which the investigatory privilege, at the least, probably applies as discussed above.

Plaintiff also requests "[a]ny and all copies of correspondence between the City of South Bend, South Bend Police Department, Ken Garcia, Department Spokesman with South Bend Police Department from January 1, 2018 to present." [DE 18-1 at 5]. UTILITY is correct that this is an unintelligible request. Plaintiff's grammatically incomprehensible construction using the conjunctions "between" and "with" fail to make clear who the parties to the requested correspondence are. The entities and individuals listed in the request do not include UTILITY or any of its employees. Thus, UTILITY reasonably could not posses or control correspondence among these named entities. Plaintiff's fourth request suffers from the same flaw using the same language to identify parties to requested "contracts, price quotes, contract proposals, and/or signed agreements." [DE 18-1 at 5]. Plaintiff has also failed to explain why information from a

non-party dating back to January 1, 2018, for a shooting eighteen month later in June 2019 is relevant.

In the end, UTILITY's objections to Plaintiff's four requests in its non-party subpoena are warranted despite UTILITY's lack of response to the instant motion to compel. The overbreadth and incomprehensibility of the UTILITY requests leave this Court bumfuzzled as to what relevant and proportional information Plaintiff seeks through the UTILITY subpoena. Indeed, Plaintiff's poorly drafted subpoena requests and motion to compel—without more explanation and supporting factual and legal authority—would only support the conclusion that Plaintiff's subpoena to UTILITY is an improper fishing expedition under Fed. R. Civ. P. 26(b)(1). Nevertheless, the Court recognizes that there may be some relevant and proportional requests that Plaintiff could make of UTILITY. Therefore, Plaintiff's motion to compel is denied without prejudice as to the UTILITY subpoena. Plaintiff may refile an amended motion to compel, if necessary, after meet and conferring with UTILITY about how to tailor the requests to proper scope of discovery. The Court also notes that Plaintiff might be better able to proportionally tailor its requests to UTILITY after pursuing some discovery with Defendants.

### B. Motion to Extend Discovery [DE 39] & Motion to Extend Defendants' Expert Disclosure Deadline [DE 44]

Through its motion to extend discovery, Plaintiff asks the Court to amend the expert disclosure, mediation, and discovery deadlines established in its Scheduling Order. Plaintiff argues that it has been unable to secure necessary discovery because the

disputes surrounding its non-party subpoenas, as raised in its motion to compel discussed above, had not been resolved; the Special Prosecutor's investigation had not been completed; and the Tapes Case had not yet resolved. Fed. R. Civ. P. 16(b)(4) only allows modifications of Rule 16(b) Scheduling Orders "for good cause and with the judge's consent." The good cause standard "primarily considers the diligence of the party seeking amendment" of a deadline. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). Good cause exists when a movant shows that "despite [her] diligence the time table could not have reasonably been met." *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995).

In response to Plaintiff's motion to extend discovery, Defendants challenged whether Plaintiff has shown due diligence in its discovery efforts. Plaintiff did initiate this lawsuit before any investigation into the shooting had even begun. Additionally, Plaintiff chose to pursue non-party subpoenas first rather than attempting to gather information from Defendants that could increase the specificity of the non-party subpoenas and expedite meaningful production. Plaintiff also agreed to the current case management deadlines in the parties Rule 26(f) Report of Parties' Planning. Yet now, its chosen litigation strategy has necessarily delayed progress in this case.

The Court recognizes that Plaintiff's conduct during discovery has created the potential for prejudice to Defendants who are entitled to a "just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1. However, this is a unique case with unique equities that must be balanced. The conclusion of the Special Prosecutor's investigation was going to stimulate the need for additional discovery in

17

any circumstances. Therefore, the Court is persuaded that good cause exists to amend the Scheduling Order to a certain extent. Accordingly, the Court grants in part Plaintiff's motion to extend discovery and grants Defendants' motion to extend their expert disclosure deadline as outlined below.

### III. CONCLUSION

For the reasons discussed above, the Court:

(1) **DENIES WITH PREJUDICE** Plaintiff's Motion to Compel [DE 18] as to the City of South Bend Mayor's Office subpoena; and

(2) **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Compel [DE 18] as to subpoenas issued to SJCPO, SJCMHU, and UTILITY.

Further terms related to these subpoenas are outlined above.

In addition, the Court **GRANTS IN PART** Plaintiff's Motion to Extend Discovery [DE 39] and **GRANTS** Defendants' Motion to Extend their expert disclosure deadline [DE 44]. The Rule 16(b) Scheduling Order issued by this Court on October 24, 2019 [DE 17] is **AMENDED** as follows:

- All fact discovery to be concluded by **May 15, 2020.**
- Plaintiff's expert disclosures due by **May 31, 2020**.
- Defendants' expert disclosures due by **July 1, 2020**.
- Mediation to be completed by **August 30, 2020**.
- All discovery, including both fact and expert discovery, to be concluded by **September 15, 2020**.
- Dispositive motions must be filed by **October 15, 2020**.

All other deadlines and directives set forth in the Court's original Scheduling Order remain in full force and effect.

**SO ORDERED** this 17th day of March 2020.

S/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge