UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| Estate of ERIC JACK LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:19-CV-495-DRL-MGG |
| | ) | |
| CITY OF SOUTH BEND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Pending before the Court are two motions: Plaintiff's Motion to Compel

Discovery Responses [DE 65]; and Plaintiff's Motion to Determine the Sufficiency of

Defendant's Answers to Rule 36 Requests for Admission [DE 73].

**I.    RELEVANT BACKGROUND**

This case arises from the shooting death of Eric Jack Logan by South Bend police

officer Ryan O'Neill ("O'Neill") on June 16, 2019. Through its Complaint, Plaintiff

brings claims against O'Neill for excessive deadly force in violation of the Fourth and

Fourteenth Amendments of the United States Constitution and for equal protection

violations under the Fourteenth Amendment. Plaintiff also raises claims against the

City of South Bend ("the City") under *Monell v. Dep't of Soc. Servs. of the City of New

York*, 436 U.S. 658 (1978).

On March 30, 2020, Plaintiff served O'Neill and the City (collectively

"Defendants") with its first set of interrogatories and requests for production.  O'Neill

produced his discovery responses on April 24, 2020, while the City produced its responses on April 29, 2020. Through an email to Defendants' counsel dated May 1, 2020, Plaintiff's counsel asked that O'Neill's "cell phones (any and all personal and city-issued) be produced for inspection by [Plaintiff's] forensic consultants.'" [DE 66-1]. In response, Defendants, through counsel, sent an email to Plaintiff on May 5, 2020, objecting to formal inspection of O'Neill's cellphone "without further explanation regarding" the type of testing to be performed and the information sought. [DE 66-2].

On May 13, 2020, Plaintiff emailed a detailed list of discovery disputes to Defendants alleging that their discovery responses were "patently deficient" and requesting all documents relating to (1) the nine formal complaints ("Formal Complaints") lodged against O'Neill, and (2) any internal investigations brought against O'Neill. [DE 65-6 at 2]. Having received no response from Defendants, Plaintiff sent a follow-up email on May 20, 2020. Plaintiff requested that Defendants produce their responses by the following day and reiterated the request for O'Neill's cellphone.

On May 21, 2020, Defendants responded via email addressing each of Plaintiff's concerns. Defendants stated that the Formal Complaints were never specifically requested and the internal investigation documents relating to the June 16, 2019, incident were protected by the investigative and deliberative process privileges. Defendants also claimed that any internal investigation documents beyond the June 2019 incident were over ten years old and therefore not proportional to the needs of this case. Regarding O'Neill's cellphone, Defendants claimed that Plaintiff failed to provide any explanation to justify a forensic inspection and, therefore, the inspection would be

unduly intrusive. Plaintiff did not attempt to confer further with Defendants after their response on May 21, 2020. Based on these unresolved disputes, Plaintiff filed the instant Motion to Compel on May 28, 2020[1].

On July 27, 2020, Plaintiff also filed its Motion to Determine the Sufficiency of Defendant's Answers to Rule 36 Requests for Admission.[2] [DE 73]. Plaintiff had propounded its First Request for Admissions on Defendants on May 15, 2020. Unsatisfied with Defendants' responses to Request Nos. 22–25, which sought admissions related to the hiring of O'Neill, Plaintiff invoked Fed. R. Civ. P. 36(a)(6) and asked the Court to determine the sufficiency of Defendants' responses.

Both motions are reviewed and resolved below.

## II.   ANALYSIS

### A.   Motion to Compel [DE 65]

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When addressing motions to compel filed under Fed. R. Civ. P. 37(a), the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. See Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently

---

[1] A redacted version of Plaintiff's Motion to Compel was filed on October 20, 2020 [DE 93], pursuant to this Court's Order dated October 6, 2020 [DE 92].

[2] A redacted version of Plaintiff's Motion to Determine the Sufficiency of Defendants' Answers to Rule 36 Requests for Admission was also filed on October 20, 2020 [DE 94], pursuant to this Court's Order dated October 6, 2020 [DE 92].

determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496. The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006).

Through the instant Motion, Plaintiff challenges Defendants' responses to its document production requests regarding (1) forensic inspection of O'Neill's cell phone [DE 65-5 at 25]; (2) Formal Complaints against O'Neill [DE 65-5 at 27]; and (3) the internal affairs documents pertaining to O'Neill [DE 65-5 at 27]. Defendants oppose Plaintiff's Motion on the merits and also contend that the Motion does not satisfy the procedural requirements of Fed. R. Civ. P. 37(a)(1), N.D. Ind. L.R. 37-1, and N.D. Ind. L.R. 7-1(b)(2). For the reasons discussed below, the Court grants in part and denies in part Plaintiff's Motion to Compel.

### 1.   Procedural Concerns

A party filing a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R. 37-1(b). Local Rule 7-1(b)(2) also requires parties to file a supporting brief with any Rule 37 motion it files.

Here, Plaintiff filed their three-page Motion to Compel without a supporting brief. In fact, Plaintiff's Motion outlines the sequence of events related to the parties' discovery disputes without citing any legal authority or developing any legal argument in support of its position. Plaintiff did, however, file a separate document entitled "N.D. Ind. L.R. 37-1(a) Certification." [DE 65-1]. Plaintiff's Certification document summarizes in four rhetorical paragraphs the parties' efforts between April 29, 2020, and May 27, 2020, to resolve these discovery disputes before turning to the Court for assistance. Specifically, the Certification reports that Plaintiff sent two letters to Defendants regarding their allegedly incomplete discovery responses but without specifying the date, time, and place of any conference or attempted conference between the parties. Absent a conference or a good faith attempt to schedule a conference, Plaintiff's Motion and Certification do not comply fully with the applicable procedural rules.

Plaintiff's procedural deficiencies are surprising given the Court's previous order dated March 17, 2020, noting Plaintiff's failure to confer with the City before filing a motion to compel in December 2019, along with its admitted failure to file a separate Rule 37-1 certification. [DE 47 at 5–6]. Yet, despite Plaintiff's continuing procedural missteps, summary denial is not warranted on the instant Motion.

Rule 37 procedural shortcomings can be overlooked if the movant "somewhat complie[d] with the purpose of Rule 37-1." *Washington v. Tovo*, No. 2:17-CV-128, 2018 WL 2126941, at *2 (N.D. Ind. May 9, 2018). Moreover, decisions on the merits of a matter are far preferable to decisions based upon procedural deficiencies. *Id.*; *see also Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782361, at *1 (S.D. Ind. Dec. 21, 2001); *Fisher v.*

*Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993). Plaintiff's Certification does not comply fully with Local Rule 37-1 but does demonstrate Plaintiff communicated with Defendants before filing the instant Motion in an effort to resolve the discovery disputes. In so doing, Plaintiff's efforts fulfilled the purpose of Fed. R. Civ. P. 37(a) and N.D. Ind. L.R. 37-1.

Additionally, Plaintiff's failure to file a supporting brief with its Motion, as required by N.D. Ind. L.R. 7-1(b)(2), only harms Plaintiff. Undeveloped or unsupported arguments generally lack the reasoning necessary to prevail and are typically waived. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017). As such, Plaintiff is the party most prejudiced by its error. Accordingly, the Court will address the merits of Plaintiff's Motion to Compel despite its failure to comply with the Local Rule.

With that said, Plaintiff—more likely its counsel—is showing a pattern of irresponsibility and sloppiness in its approach to the procedural requirements applicable in this Court, which cannot be ignored and must be addressed. Having overlooked procedural deficiencies on two Rule 37 motions, this Court advises Plaintiff that future errors will not be so easily forgiven and overlooked. Any further neglect of the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Indiana by Plaintiff will be unduly prejudicial to Defendants and will violate the Court's obligation to timely resolve disputes pursuant to Rule 1. As a result, the Court will impose sanctions as appropriate for future violations of the applicable Rules.

## 2.    O'Neill's Cell Phone

Plaintiff's Motion to Compel seeks production of "O'Neill's cell phone(s) for non-destructive inspection." [DE 65 at 3]. In support of its request, Plaintiff contends that the cost of such inspection to Defendants, if any, would be negligible, especially because the forensic examiner would travel to South Bend to conduct the examination in the presence of O'Neill and his lawyer. As such, Plaintiff argues that its request poses only a minor burden and is clearly proportional to the needs of the case.

Defendants seemingly object to such production on several grounds. However, the Defendants' argument essentially boils down to two primary objections. First, Defendants argue that Plaintiff has not identified any basis, explanation, or rationale that would justify the need for the extraordinary remedy of a forensic examination in this case. Second, Defendants contend that Plaintiff failed to identify with particularity what information it seeks from the relevant cell phones precluding a finding of proportionality. Ultimately, Defendants conclude that Plaintiff is on a fishing expedition contrary to the rules of discovery.

"A forensic ESI exam constitutes an extraordinary remedy that is required '[o]nly if the moving party can actually prove that the responding party has concealed information *or* lacks the expertise necessary to search and retrieve all relevant data.'" *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *2 (N.D. Ill. Dec. 23, 2019) (quoting *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08-CV-693, 2009 WL 3347101, at *1 (E.D. Wis. Oct. 15, 2009)). "Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support

an intrusive examination of the opposing party's electronic devices or information system." *Belcastro*, 2019 WL 7049914, at *2 (quoting *Hespe v. City of Chicago*, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016)). "In determining whether a third-party exam is required, courts must guard against undue intrusiveness and protect the non-moving party's privacy interests." *Belcastro*, 2019 WL 7049914, at *2 ; *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp*, 365 F. Supp. 3d 916, 925 (N.D. Ill. 2019) ("The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests"). "To that end, courts must take care to ensure that the request for a forensic exam is proportional to the needs of the case." *Belcastro*, 2019 WL 7049914, at *2 . A couple of district court cases cited by Defendants bear on the proportionality analysis regarding forensic exams.

Courts are more likely to grant forensic exams when the sought-after information goes to the heart of the case. In *Belcastro v. United Airlines, Inc.*, the defendant sought a forensic exam of the plaintiff's electronic devices to retrieve a text message that the plaintiff allegedly could not locate. 2019 WL 7049914, at *1. According to the plaintiff, the text message was central to his defamation claim. *Id.* While the court recognized the plaintiff's legitimate privacy concerns regarding a forensic exam, it nonetheless granted the request because of the importance of the text to the case, and because of the limited scope of the exam. *Id.* at *4.

In contrast, courts are more likely to deny forensic exams when the request is "overly broad in nature and where the connection between the party's claims and the

8

[electronic device] is unproven." *Hespe*, 2016 WL 7240754, at \*4 (quoting *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015)) (alteration in original). In *Hespe v. City of Chicago*, the defendants sought to compel production of the plaintiff's computer and cell phone for a forensic inspection. 2016 WL 7240754, at \*2. The defendants argued "that they could not rely on plaintiff's representation that she had produced all the ESI" requested because "she had made ambiguous statements about the manner and completeness of her production." *Id.* The court weighed the evidence in favor of production—which it found to be sparse—against (1) the "plaintiff's interest in protecting her privacy rather than allowing unfettered access to her personal devices and (2) the generic and apparently inconclusive nature of the unspecified ESI for which defendants want[ed] to search . . . ." *Id.* at \*6. The court held that the magistrate judge did not err in ruling that the forensic inspection was not proportional to the needs of the case. *Id.*

Here, the requested inspection is not proportional to the needs of this case because any benefit the inspection might provide is outweighed by Defendants' privacy and confidentiality interests. Unlike *Belcastro*, where the missing text message went to the heart of the plaintiff's case, here Plaintiff has not shown that the information sought goes to the heart of—or is even relevant to—the present case. For the first time in its reply brief, Plaintiff indicated that its request is limited to "incoming and outgoing phone calls, web history, photographs, video, SMS messages, [and] MMS messages while O'Neill was working his shift on June 16, 2019." [DE 69 at 3]. Arguably, the Court need not consider this belated argument as to the relevance of the information

suggested. *See Parkhurst*, 865 F.3d at 524. But even considering it, Plaintiff does not provide sufficient information as to how the cell phone information is relevant or why it goes to the heart of the case, leaving the Court unable to ascertain whether a forensic examination of O'Neill's cell phone—even limited to the time of his shift on the date of the incident—is proportional enough to justify invading O'Neill's privacy interests. Without more, the Plaintiff's request requires the Court to engage in speculation to determine relevance, which is something that this Court will not do.

Additionally, Plaintiff has not even attempted to "prove that [Defendants have] concealed information or lack[] the expertise necessary to search and retrieve all relevant data"—a condition identified in *Belcastro* as necessary before a forensic inspection is granted. 2019 WL 7049914, at *2. Plaintiffs failure to allege (1) the importance of the information it seeks, (2) intentional concealment of information, or (3) lack of expertise on the part of Defendants support the conclusion that the inspection sought is not proportional to the needs of the case.

Plaintiff argues that the "Court cannot sustain a proportionality objection without a specific showing of the burden that the objecting party would endure and why it is disproportionate to the needs of the case." [DE 69 at 3]. However, as noted in *Hespe*, Rule 26(b)(2)(C) directs a court, on motion or on its own, to "limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." 2016 WL 7240754, at *3. Fed. R. Civ. P. 26(b)(1) defines the proper scope of discovery in all civil litigation before this Court as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Production of O'Neill's cell phones for forensic inspection is outside the scope of Rule 26(b)(1) for several reasons.

First, Plaintiff has failed to demonstrate the importance of the information sought. As previously noted, Plaintiff has not attempted to identify the information it hopes to attain from the inspection, or how any information retrieved will help resolve any issues in this case. Second, O'Neill has already "produced his cell phone records showing the phone calls and text messages made and received on June 16, 2019." [DE 66 at 9]. The record does not show—and the Plaintiff does not allege—that Defendants concealed information or failed to produce certain phone calls or text messages from the day in question. Finally, though the overall expense of the inspection would be negligible, the likely benefit is outweighed by the Defendant's privacy and confidentiality interests.

For the reasons cited, an intrusive forensic examination of Defendant's cell phones is not proportional to the needs of the case. Plaintiff's Motion to Compel Production of O'Neill's cellphone is therefore denied.

### 3.  Nine Formal Complaints Against O'Neill

Request number 16 of Plaintiff's March 30, 2020, request for production begins with the phrase: "From the personnel files of Defendant Ryan O'Neill, please provide the following . . . ." [DE 65-5 at 27]. The request then proceeds to list various documents that Plaintiff ostensibly thought would be included in O'Neill's personnel files. *Id*. The request closes with the following sentence: "This request includes but is not limited to documents related to the nine (9) formal complaints that Sgt. O'Neill was subject to during his nineteen (19) year career as a South Bend Police officer." *Id*. Documents pertaining to the Formal Complaints were never produced.

Plaintiff's motion to compel seeks production of "all the documents related to O'Neill [sic] nine (9) formal complaints." [DE 65-5]. In support of its motion, Plaintiff argues that Defendants did not meet their burden to explain why their objections were proper and, regardless, the Formal Complaints are relevant to Plaintiff's *Monell* claim.

Defendants contend that the Formal Complaints were not separately requested. To make this argument, Defendants rely on the introductory language of the request— "From the *personnel files* of Defendant Ryan O'Neill"—to conclude that information outside the personnel files was not requested. *Id.* (emphasis added). Accordingly, since the Formal Complaints were never included in the personnel file, they were not provided.[3] Though the request is not completely clear of ambiguity, it sufficiently describes the documents sought to be produced or inspected.

---

[3] The Defendants did, however, provide Plaintiff with the "complete personnel file" absent the medical portion.

"A party may serve on any other party a request within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). Such request "must describe with reasonable particularity each item or category of items to be inspected . . . ." Fed. R. Civ. P. 34(b)(1)(A). Here, the request is prefaced with the words: "From the personnel files of Defendant O'Neill . . . ." [DE 65-5 at 27]. However, the request concludes by explicitly mentioning the Formal Complaints. Accordingly, the request describes—with reasonable particularity—the documents requested.

Defendants also object to production of the Formal Complaints on the grounds "that any complaints against Defendant O'Neill were made prior to June 16, 2009; and, as such, are more than ten years old; and, thus, discovery related to them is not proportional to the needs of the case." [DE 66 at 12]. Fed. R. Civ. P. 26(b)(1), as previously quoted, defines the proper scope of discovery in all civil litigation before this Court. Plaintiff's request for production of the Formal Complaints fall within the scope of discovery for several reasons.

First, the information is relevant. Relevancy in the realm of discovery under Fed. R. Civ. P. 26 (b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Here, Plaintiff has asserted two separate *Monell* claims against the City. As correctly noted by Plaintiff in its reply, establishing liability under *Monell* in this case will require Plaintiff to show that "her father's constitutional rights were violated as a

13

result of a widespread policy, practice, or custom that South Bend was aware of but failed to correct."[4] [DE 69 at 4 (citing *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010))]. The Formal Complaints, while old, may help establish such policy or custom by providing some insight into what the City was aware of regarding O'Neill's practices. Since the Formal Complaints may help establish an issue critical to Plaintiff's *Monell* claims, they are relevant.

Second, as alluded to above, the information may prove important to the issues at stake in the action. Though the Defendants state that "O'Neill did not have any complaints related to use of force or race discrimination within the ten years preceding the" 2019 incident, any allegations of such practices during O'Neill's 19-year career may help establish Plaintiff's claims. Overall, while the age of the complaints may dilute their importance in establishing Plaintiff's *Monell* claims—and may even serve to undermine such claims—the information, when combined with more recent evidence, may help establish the alleged failure of the City to correct widespread unconstitutional practices.

Third, Defendants have not explained "*precisely* why [their] objections are proper given the broad and liberal construction of the federal discovery rules." *Todero v. Blackwell*, No. 1:17-cv-01698-TWP-MJD, 2018 WL 10601816, at *1 (S.D. Ind. Apr. 6, 2018) (emphasis in original). To be sure, the Formal Complaints may ultimately prove to be of

---

[4] Once again Plaintiff's argument, like others referenced in this Order, was raised for the first time in Plaintiff's reply. To ensure a just and speedy resolution to this case, the lateness of the argument will be overlooked. But Plaintiff should be advised that continued lateness may result in waiver of future arguments.

little or no use in developing Plaintiff's *Monell* claims. However, besides the age of the Formal Complaints, Defendants have not pointed to any information that would render the documents not proportional to the needs of the case—such as information relating to the cost of production or the burden of retrieval.

For the reasons cited, the information is proportional to the needs of the case. Defendants have failed to meet their burden to show why Plaintiff's request is improper. The motion to compel with respect to the Formal Complaints is granted.

### 4.     Internal Affairs Documents Pertaining to O'Neill

Plaintiff requested all internal affairs documents related to O'Neill's 19-year career, including the June 16, 2019 incident. [DE 65-5 at 16]. The requests will be addressed separately, starting with the request relating to the June 16, 2019, incident, and then addressing all other internal affairs documents.

### a.     June 16, 2019 incident

Defendants argue that the internal affairs documents relating to the June 16, 2019, incident are protected from disclosure by the investigative and deliberative process privileges. Plaintiff, in its reply, disputes the applicability of the investigatory privilege. But Plaintiff does not address the deliberative process privilege.

The law enforcement investigatory privilege is not absolute but exists "to prevent disclosure of law enforcement techniques and procedures, to preserve confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Szany v. City of Hammond*, No. 2:17-CV-74-PPS-JPK, 2019 WL 3812492, at

15

*1 (N.D. Ind. Aug. 14, 2019) (internal quotations and citations omitted). It applies to protect "civil as well as criminal law enforcement investigatory files from civil discovery." *Browning v. City of S. Bend*, No. 2:09 cv 203, 2010 WL 3894223, at *3 (N.D. Ind. Sep. 30, 2010). Indeed, disclosure of investigative materials before an investigation is complete "could certainly have a chilling effect on the willingness of [individuals] to participate openly in such investigations." *Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 565–66 (S.D. Ind. 2004).

However, the privilege "can be overridden in appropriate cases by the need for the privileged materials." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). In determining whether to allow disclosure of investigative materials, a court must balance "the need of the litigant who is seeking privileged investigative materials . . . against the harm to the government if the privilege is lifted . . . ." *Id.* In so doing, the court essentially mediates between a plaintiff's "desire to expedite [its] civil litigation and the government's conduct of its . . . investigation[, which] is not a proper judicial role." *Id.* Accordingly, there is a strong presumption against lifting the privilege. *Id.* Courts weigh ten factors when determining whether the investigatory privilege applies:

(1)    The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
(2)    The impact upon persons who have given information of having their identities disclosed;
(3)    The degree to which governmental self evaluations and consequent program improvement will be chilled by disclosure;
(4)    Whether the information sought is factual data or evaluative summary;
(5)    Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
(6)    Whether the investigation has been completed;

(7)     Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8)     Whether the plaintiff's suit is nonfrivolous and brought in good faith;

(9)     Whether the information sought is available through other discovery or from other sources; and

(10)    The importance of the information sought to the plaintiff's case.

*Szany*, 2019 WL 3812492, at *1–2 (citing *Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 206 (S.D. Ind. 2012); accord *Anderson*, 220 F.R.D. at 563-64; *Jones v. City of Indianapolis*, 216 F.R.D. 440, 444 (S.D. Ind. 2003)).

Several considerations weigh in favor of not lifting the investigatory privilege. First, the investigation has not been completed. *See Szany*, 2019 WL 3812492, at *1. In their response, Defendants stated that "the investigation is ongoing" and, as a result, no determinations regarding disciplinary proceedings have been made. [DE 66 at 14].

Second, requiring premature disclosure of such information may impair the objectivity of the investigation. This assertion is persuasively argued by Defendants in their response. [DE 66 at 14 ("To require the City to disclose the investigation file prior to any decision would impair the City's ability to objectively investigate and determine any outcome.")]. The purpose of internal affairs investigations is to investigate potential officer misconduct. Involving the investigators in the litigation process by requiring disclosure of their predecisional evaluations may avert their focus and attention from their important investigative task and refocus that attention on the merits of the instant case. Keeping the investigators insulated from the current case—at least until their decisions have become final—may avoid the unnecessary entanglement of the internal investigation and the discovery process, leading to a more objective investigation.

Third, and most important, the information sought is not factual data but rather evaluative. *See Szany*, 2019 WL 3812492, at *1. Defendants assert that the information sought is evaluative because it is not factual data and reflects "the City's evaluation of information previously gathered and produced by the Metro Homicide Unit." [DE 66 at 14]. The Court takes this statement to mean that all factual data being used in the internal investigative process has been previously disclosed to Plaintiff and the only undisclosed information is the individual investigators' predecisional evaluations. To the extent this interpretation is correct, disclosure it not required. However, if there are any internal affairs documents that are factual and have not previously been disclosed to Plaintiff, they are discoverable and must be disclosed.

Plaintiff fails to rebut Defendants' objection based on the deliberate process privilege. In fact, Plaintiff makes no mention of the deliberative process objection in its motion to compel. Plaintiff only mentions the privilege once in its reply brief, and only to point out that Defendants raised the privilege. [*See* DE 69 at 5]. This omission is surprising considering the Court's previous Order dated March 17, 2020, in which the Court found that Plaintiff similarly waived its argument by not mentioning it in the reply brief. *See* DE 47 at 11 (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver")); *see also Wojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (explaining that the plaintiff's "failure to offer any opposition to [the defendant's] . . . argument constituted a waiver"). As such, Plaintiff arguably waived any argument against application of the

18

deliberative process privilege to this request. Moreover, the deliberative process privilege applies to at least parts of the internal affairs evaluations Plaintiff is seeking.

The deliberative process privilege "protects communications, such as advisory opinions, recommendations and deliberations, that are part of the decision-making process of a governmental agency." *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, No. IP 94-1175-C-T/G, 1998 WL 1988826, at *8 (S.D. Ind. May 13, 1998), *aff'd sub nom.* *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743 (7th Cir. 1999) (citing *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). For the privilege to apply, "the communication must be (1) pre-decisional and (2) deliberative." *Browning*, 2010 WL 3894223, at *2 (N.D. Ind. Sep. 30, 2010)). According to the Seventh Circuit, this means "predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated." *Id.* at *2 (quoting *Enviro Tech Int'l, Inc. v. United States EPA*, 371 F.3d 370, 375 (7th Cir. 2004)).

Here, to the extent the information sought meets both criteria, the deliberative process privilege would arguably protect it from discovery. However, the Court need not consider this in depth because any purely evaluative documents are protected from disclosure by the investigative privilege, and the deliberative process privilege does not extend to purely factual information. *See Enviro Tech Int'l, Inc.*, 371 F.3d at 374 (7th Cir. 2004) ("the deliberative process privilege typically does not justify the withholding of purely factual material").

### b.    Prior to June 16, 2019 incident

Defendants object to discovery of all internal affairs documents predating the June 16, 2019, incident on the grounds that such request is irrelevant and not proportional to the needs of the case. Defendants argue that the internal affairs documents request seeks information that is over ten years old. Moreover, Defendants argue that the request is not limited to any sustained complaints, specific topic, or relevant time frame. Plaintiff does not address Defendant's objection in its reply.

Plaintiff's failure to develop an argument—any argument—in favor of their request seriously undermines their efforts to acquire the documents. Undeveloped or unsupported arguments generally lack the reasoning necessary to prevail and are typically waived. *See Parkhurst*, 865 F.3d at 524. This is especially so where, as here, the objecting party presents credible arguments attacking the relevance of the documents sought.

Though the "burden rests upon the objecting party to show why a particular discovery request is improper[,]" *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009), "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake County Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *Greenbank v. Great Am. Assurance Co.*, 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4, 2019) ("A party moving to compel production carries the initial burden of establishing, with specificity, that the requested documents are relevant.").

"When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Jones v. Hamilton Cnty. Sheriff's Dep't*, IP02-0808-C-H/K, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003); *Vajner v. City of Lake Station, Ind.*, No. 2:09-CV-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010). However, "when the request is overly broad on its face, or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Vajner*, 2010 WL 4193030, at *2.

Plaintiff did not meet its burden in establishing the relevancy of the internal affairs documents that predate the June 2019 incident. Moreover, even if the information sought appears relevant in some tangential way, Defendants' uncontested and unanswered arguments support the conclusion that the documents are of only marginal relevance, and that discovery of them is improper. Several considerations bear on the Court's conclusion.

First, unlike the Formal Complaints specifically requested by Plaintiff—which the Court finds discoverable—Plaintiff has not confined its request for the internal affairs documents in any discernable way. Indeed, Plaintiff's reply does not make any attempt to cabin the request for the internal affairs documents—not by timeframe, topic, or complaint. Of course, it is possible that after Plaintiff's receives the Formal Complaints, Plaintiff will be better able to specify what information it is seeking. But the

overly broad and unsupported request that is currently before the Court fails to demonstrate the relevance of the internal affairs documents.

Second, Plaintiff does not specify how discovery of the internal affairs documents may benefit any of its claims. Merely stating that the "Internal Affairs investigations into [O'Neill] are germane to plaintiff's case" does not provide any clue about what claims—or what internal affairs documents—Plaintiff is referring to. [*See* DE 69 at 6]. Failure to link the requested documents to any dispute at issue, combined with the far-reaching nature of the request, supports the Court's finding that the documents are not relevant and not discoverable.

Third, the fact that there are no internal affairs documents regarding O'Neill in the ten years preceding the June 2019 incident—while not enough alone to satisfy the Court that such documents are irrelevant—weighs in favor of non-disclosure. When combining the broad nature of the request ("all Internal Affairs documents related to O'Neill with respect to . . . any other incident during his 19-year career") with the age of the documents ("there are no such files in the ten years prior to the incident"), the Court is left with the conclusion that the documents are not relevant to the instant case.

Plaintiff's motion to compel with respect to the internal affairs documents relating to the June 16, 2019, incident is denied to the extent that such information is predecisional and evaluative in nature; the motion is granted to the extent it relates to factual information that has not yet been supplied to Plaintiff. The motion to compel all other internal affairs documents that preceded the June 16, 2019, incident is denied.

**B.     Motion to Determine the Sufficiency of Defendants' Answers [DE 73]**

Plaintiff served Defendants with its first Request for Admissions, and

Defendants timely responded.[5] Plaintiff found Defendants' answers to Request Nos. 22-

25 insufficient. Request Nos. 22-25 pertain to what the South Bend Police Department

("the Department") knew about O'Neill prior to extending him an offer of employment.

More specifically, the requests seek the City's admission that the Department,

specifically Lt. Hecklinski, was informed by two patrolmen and a police sergeant that

O'Neill had violent tendencies, and that such tendencies may lead to "another black eye

for the department at some point in the future." [DE 73 at 3]. Defendants objected to the

requests, stating they "regard[ed] matters that are outside the scope of this case and are

not proportionately related to the issues, claims and defenses in the case." [DE 73 at 3].

Through the instant Motion, Plaintiff asks the Court to determine whether Defendants'

objections in response to Plaintiff's first Request for Admission—specifically the

objections raised in response to Request Nos. 22-25—are sufficient. In response,

Defendants argue that Plaintiff's Motion should be denied because (1) its counsel did

not confer with Defendants' counsel before seeking the Court's assistance on this

discovery motion, as required by N.D. Ind. L.R. 37-1; and (2) the Requests seek an

---

[5] Defendants note that the Court's original Rule 16(b) Scheduling Order mandated that "[a]ll discovery other than depositions must be initiated at least forty-five days before the cut-off date." [DE 17 at 3]. Plaintiff's Requests for Admission, served on May 15, 2020, were untimely because they were initiated only 30 days before the fact discovery deadline of June 15, 2020. [*See* DE 17, 47, 59]. While not dispositive of the instant Motion, Plaintiff's recurring refusals to comply with this Court's case management orders and the rules applicable in this Court is of ongoing concern.

admission regarding matters outside the scope of the case and are not proportional to the needs of this case.[6]

Defendants' Rule 37-1 argument is well taken. As discussed in more detail above, Plaintiff's failure to comply fully with the requirements of Local Rule 37-1 has become a repetitive, bad habit that the Court will not tolerate further. More importantly, Defendants' objections to Request Nos. 22–25 are well-founded despite Plaintiff's attempt to demonstrate their relation to its *Monell* claim.

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of 26(b)(1) . . . ." Fed. R. Civ. P. 36(a)(1). "The party upon whom a request for admission is served must either object or answer the request." *Brown v. Overhead Door Corp.*, No. 06 C 50107, 2008 WL 4614299, at *1 (N.D. Ill. Oct. 16, 2008) (citing Fed. R. Civ. P. 36(a)(4)). If a requesting party believes a response to be insufficient, it "may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). "If the Court finds that an objection is not justified, it must order that an answer be served." *Buchanan v. Chi. Transit Auth.*, Case No. 16-cv-4577, 2016 WL 7116591, at *3 (N.D. Ill. Dec. 7, 2016). "When a challenge to sufficiency of responses is made under Rule 36, it is the party opposing the challenge that has the burden of persuasion to show that the response to the request is sufficient." *Climco Coils Co. v.*

---

[6] Defendants did not file a response to the instant Motion until October 29, 2020 [DE 96]. Upon receipt of this untimely brief, the Court ordered Defendants to show cause why the brief should not be stricken given the briefing deadline established under N.D. Ind. L.R. 7-1(d)(3)(A). [DE 99]. Defendants timely responded explaining their counsel's misunderstanding of the applicable Local Rules in situation where, like here, a motion to seal the original motion remained pending. [DE 108]. Finding Defendants' counsel's error excusable, the Court will consider Defendants' Response in resolving the instant Motion. No reply brief need be considered.

*Siemens Energy & Automation, Inc.*, No. 04 C 50342, 2006 WL 850969, at *1 (N.D. Ill. Mar. 28, 2006).

Plaintiff's *Monell* claim specifically charges the City with implementing policies and practices that encourage police misconduct "by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference." [DE 1 at 5]. Citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997), Plaintiff argues that he can support this claim by showing that the City knowingly hires police officers that are prone to violence and other aggressive behaviors. Indeed, an "official's failure to adequately scrutinize [an] applicant's background [may] constitute 'deliberate indifference,' [but o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be deprivation of a third party's federally protected rights . . . ." *Id.*

Yet in *Brown*, the Supreme Court vacated a judgment against the county based on the relevant hiring and training decision by a county sheriff. *Id.* at 416. The Court found that the plaintiff had not demonstrated that the sheriff's hiring decision "reflected a conscious disregard for a high risk that [the officer] would use excessive force in violation of [the plaintiff's] federally protected right." *Id.* at 415–16. The Court reasoned that "fail[ure] to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability," which was never intended by *Monell*. *Id.*

Here, the Court need not even consider the high standard for *Monell* liability based upon a hiring decision. Plaintiff's Complaint does not make an allegation that the hiring of O'Neill was the underlying basis for its *Monell* claim. As such, the facts surrounding the hiring of O'Neill fall outside the scope of Plaintiff's claims. Accordingly, discovery into the hiring of O'Neill is irrelevant, and Plaintiff's instant Motion must be denied.

## III.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel [DE 65]. Consistent with this Opinion, Defendants are **ORDERED** to serve Plaintiff on or before **February 26, 2021**, with (1) all documents related to O'Neill's nine Formal Complaints; and (2) all factual information included in internal affairs documents related to the June 16, 2019, incident at issue in this case.

The Court also **DENIES** Plaintiff's Motion to Determine the Sufficiency of Defendants' Answers [DE 73].

**SO ORDERED** this 3rd day of February 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge