UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Estate of ERIC JACK LOGAN, Deceased, | ) |
| Plaintiff, | ) ) ) |
| v. | )  CASE NO. 3:19-CV-495-DRL-MGG ) |
| CITY OF SOUTH BEND, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Pending and ripe before the Court is Defendants' Motion for Issuance of Protective Order [DE 151]. For the reasons stated below, Defendants' Motion is **GRANTED**.

I. **RELEVANT BACKGROUND**

On February 3, 2021, the Court issued an opinion and order (the "February 2021 Order") granting in part and denying in part Plaintiff's Motion to Compel [DE 65][1]. Plaintiff's Motion to Compel requested an order compelling Defendants to produce, among other records, all internal affairs documents and nine formal complaints pertaining to Defendant O'Neill. [DE 65]. In the February 2021 Order, Defendants were compelled to produce (1) all documents related to Defendant O'Neill's nine formal complaints (the "Formal Complaints"), and (2) all factual information included in internal affairs documents related to the June 16, 2019, incident at issue in this action. [DE 149 at 26].

---

[1] A more extensive factual background of this action is also provided in the February 2021 Order. [*See* DE 149 at 1-3.]

The Court granted Plaintiff's Motion to Compel with respect to the Formal Complaints after finding that the Formal Complaints were relevant and proportional to Plaintiff's needs in the case, particularly regarding Plaintiff's *Monell* claims. *Id.* at 14-15. Plaintiff's Motion to Compel with respect to the internal affairs documents prior to the June 16, 2019, incident was denied because Plaintiff did not establish the relevancy of these internal affairs documents. [DE 149 at 22]. Plaintiff's Motion to Compel was also denied with respect to internal affairs documents relating to the June 16, 2019, incident to the extent that the information is predecisional and evaluative in nature. *Id.*

On February 25, 2021, Defendants filed the instant Motion for Issuance of Protective Order under Rule 26(c). [DE 151]. Through their Motion, Defendants request that the Formal Complaints be produced pursuant to a protective order that prohibits "any party or witness from disclosing or disseminating the documents to the public, and [that] maintain[s] the documents only for purposes of this litigation." [DE 151 at 4–5]. Defendants also ask the Court's permission to redact any social security numbers before producing the records. Thus, Defendants are willing to produce the Formal Complaints to comply with the Court's previous order but seek to limit the extent of its disclosure during pretrial discovery.

Notably, this Court has already issued three protective orders in this case, as stipulated by the parties, on March 5, 2020, May 7, 2020, and May 27, 2020. [DE 46, DE 53, DE 61]. However, these protective orders do not expressly include the Formal Complaints in their scope. Therefore, Plaintiff's counsel refused to agree to Defendants' proposed amended protective order when contacted by Defendants' counsel before

filing the instant Motion. [DE 151 at 2, ¶ 3]. Plaintiff filed his Response in Opposition to Defendants' Motion for Issuance of Protective Order on March 11, 2021. [DE 152]. Defendants' instant Motion became ripe on March 19, 2021, without any reply brief filed.

II. ANALYSIS

    A. **Legal Standard**

The court has discretion to enter a protective order under Rule 26(c) "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *McGee v. City of Chicago*, No. 04 C 6352, 2005 WL 3215558, at *1 (N.D. Ill. June 23, 2005). Such a protective order may "forbid[] the disclosure or discovery" or "require[] that . . . confidential research, development, or commercial information not be revealed or be revealed only in a specific way . . . ." Fed. R. Civ. P. 26(c)(1)(A), (G).

When deciding whether to enter a protective order, the court must find good cause "for sealing a part or the whole of the record in [a] case." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). Good cause "is difficult to define in absolute terms, [but] it generally signifies a sound basis or legitimate need to take judicial action." *McGee*, 2005 WL 3215558, at *1 (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). "In deciding whether good cause exists, the district court must balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to the public." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). This analysis requires the court to

consider the "facts and circumstances of each case," including "privacy interests, whether the information is important to the public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Id.*

"The burden to show good cause is on the party seeking the order." *Autotech Techs. L.P. v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill., 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)). "Conclusory statements are not sufficient." *Id.* (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *8 (N.D. Ill. Jan. 5, 1998)); *see also* C. Wright & A. Miller, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.). "In the context of a motion for protective order, as in all others, the *ipse dixit* of counsel will not suffice." *Autotech Techs.*, 235 F.R.D. at 440. Further, "perfunctory and undeveloped argument . . . unsupported by pertinent authority, hardly merits consideration." *Id.* at 443. Accordingly, "[t]here must be a particularized and specific demonstration of fact." *Id.* at 440.

   **B.** **Discussion**

Defendants present four arguments in support of their request for a protective order: (1) most of the Formal Complaints are nearly ten years old; (2) the Formal Complaints contain investigative materials by other officers within the South Bend Police Department; (3) the Formal Complaints contain identifying information of complainants and witnesses; and (4) this action is still in the pretrial discovery phase, and there has not been a demonstration of admissibility at a hearing or trial. Defendants primarily support these arguments by referring to nine cases wherein protective orders

were entered for police officer complaints on similar facts and circumstances. [DE 151 at 4, ¶ 13].

Plaintiff argues that Defendants have not met their burden to show good cause and that the public's interest in the Formal Complaints outweighs the reasons presented by Defendants. Plaintiff also distinguishes the facts and circumstances of this action from three of the cases relied upon by Defendants.

While the Defendants' first two arguments are not persuasive in showing good cause for a protective order for the Formal Complaints, the latter two arguments and supporting authority do provide the requisite good cause. The Court will address each argument in turn.

        1.        **Age and Investigative Substance of Formal Complaints**

Defendants' first two arguments provide context for the complaints but do not provide any articulated reasoning regarding the privacy interests or potential harm to the Defendants that would support a showing of good cause. First, Defendants state that an amended protective order protecting the Formal Complaints from public disclosure is warranted because the Formal Complaints contain "investigation materials by other officers within the South Bend Police Department, and their investigative summaries and analysis of the complaint." [DE 151 at 3, ¶ 10]. Defendants provide no additional analysis for this argument other than contending that, per the February 2021 Order, they are "not required to produce the internal affairs investigations file related to O'Neill, which would include any investigation file related to the nine formal complaints." [DE 151 at 1, ¶ 2]. Thus, Defendants appear to argue that investigative

materials and summaries included in the Formal Complaints provide good cause for a protective order, but also contend that they are not required to produce investigative file documents related to the Formal Complaints. These statements are seemingly contradictory, and, without further analysis or reasoning from Defendants, are not sufficient to show good cause for producing the entirety of the Formal Complaints under a protective order. *See Autotech Techs.*, 235 F.R.D. at 440; *Wiggins*, 173 F.R.D. at 229.

Second, Defendants argue that most of the Formal Complaints are more than ten years old: "[t]he only complaint from a citizen since 2008 was made in 2019, and is the basis of the criminal conviction of Defendant O'Neill. The only other 'complaint' made after 2008 was an administrative note made in 2018 related to improper body camera usage." [DE 151 at 3, ¶ 7]. However, the Formal Complaints have been deemed relevant and proportional to Plaintiff's needs in his case [DE 149 at 14: "The Formal Complaints, while old, may help establish such policy or custom by providing some insight into what the City was aware of regarding O'Neill's practices. Since the Formal Complaints may help establish an issue critical to Plaintiff's *Monell* claims, they are relevant."] Defendants provide no other argument regarding the privacy interests of or potential harm to Defendant O'Neill related to the age of the complaints. Further, none of the cases relied upon by Defendants consider the age of Formal Complaints in their good cause analysis. Therefore, these arguments are not sufficient to show good cause for a protective order prohibiting public disclosure of the Formal Complaints.

### 2. Identifying Information

Third, Defendants request a protective order because the Formal Complaints contain the complainant's identifying information, including: "address, date of birth, social security number, telephone numbers, and any potential criminal history such as arrest, charges, or convictions" as well as identifying information from witnesses: "addresses, telephone numbers, and dates of birth." [DE 151 at 3, ¶ 8]. Defendants state that providing the Formal Complaints without maintaining this information under a protective order "places the complainants and witnesses, non-parties, at risk of having their information publicized without their consent." *Id.* at ¶ 9. Defendants support this argument through authority finding good cause to issue a protective order for similar complainant and witness information in police officer complaints.

In *McGee v. City of Chicago*, the plaintiff brought a civil rights action against the City of Chicago and three of its police officers, including a *Monell* claim. 2005 WL 3215558, at *1. The court considered a proposed protective order from the defendants that sought to shield, among other categories of documents, Employee Complaint Histories and C.R. files from public disclosure. C.R. files, like the Formal Complaints, are documents generated by the Chicago Police Department in response to complaints of police misconduct. *Id. at* *3. These files, like the Formal Complaints at issue here, contain identifying information of the complainant and any witnesses. The *McGee* court found that "[c]omplainants and witnesses involved in law enforcement investigations do have a valid expectation of privacy with respect to their identities. [internal citation omitted]." *Id.* at *4. Therefore, the *McGee* court found good cause to keep "all

identifying information of complainants and witnesses [] protected from public disclosure . . . ." *Id.*

In addition, in *Acuna v. Rudzinski*, the plaintiffs brought a Section 1983 claim against Chicago Police Department officers, and one plaintiff brought a *Monell* claim against the City of Chicago. No. 00 C 5635, 2001 WL 1467529, at *1 (N.D. Ill. Nov. 16, 2001). *Acuna* also considered whether the plaintiffs' counsel should be permitted to disclose C.R. files beyond the needs of that action. The C.R. files in *Acuna*, like the Formal Complaints, contained identifying information of complainants and witnesses. The *Acuna* court noted that "[t]he circumstances that gave rise to the complaints are likely to have been embarrassing to many of the complainants. . . . In making complaints against the officers, it was certainly not within the contemplation of the complainants that they would be laying themselves open to an indefinite number of contacts by attorneys or investigators by private litigants." *Id.* at *5.

Plaintiff does not specifically respond to the privacy interests of complainants' and witnesses' identifying information. Plaintiff does distinguish *McGee* in his response; however, Plaintiff's distinction does not impact the *McGee* court's analysis protecting witness and complainant identifying information in police officer complaints from public disclosure. Therefore, there is good cause for a protective order prohibiting the public disclosure of this identifying information in the Formal Complaints.

Defendants also request permission to redact social security numbers before disclosing the complaints to Plaintiff. There is clearly good cause to protect such information. *See* Fed. R. Civ P. 5.2. In addition, Plaintiff does not respond to Defendants'

request to redact social security numbers and therefore, provides no reason why such identifying information should be left unprotected when it is produced to Plaintiff. *See King v. Riley*, No. 13-cv-7609, 2014 WL 4167847, at *3 (N.D. Ill. Aug. 21, 2014). Therefore, there is also good cause for Defendants to redact social security numbers.

3.   **Privacy Interests of Pretrial Discovery**

Finally, Defendants argue that the potential harm to the Defendants' and nonparties' reputations, as well as the context of the action in pretrial discovery, support good cause for a protective order. Defendants state:

> [a]llowing the information within the complaints to be unprotected, allows Plaintiff's counsel the ability to disseminate the information to either the public through the media, or in any other case Plaintiff's counsel would choose to use it in. At the pretrial discovery stage, allowing such unlimited dissemination risks not only the potential for a fair trial in this matter by potentially tainting the jury pool, but such unlimited dissemination could also potentially jeopardize the reputation of other police officers, complainants or witnesses.

[DE 151 at 4, ¶¶ 1–12]. Defendants' authorities, particularly *Coffie v. City of Chicago*, support this argument. No. 05 C 6745, 2006 WL 1069132, at *1 (N.D. Ill. Apr. 21, 2006).

In response, Plaintiff argues that the public interest in the Formal Complaints overrides the privacy interests of and the potential harm to the Defendants. Plaintiff argues such complaints are handled at taxpayers' expense and that there is a strong public interest in staying informed about public officials, especially law enforcement officers. [DE 152 at 5-6, ¶ 8]. Plaintiff also rebuts Defendants' argument via one of Defendants' own supporting authorities, *McGee*, noting that this court also found that "the effectiveness of the Chicago Police Department's internal investigations is

strengthened by public review of [complaint files] produced in civil rights litigation . . . police officers are more likely to be truthful or candid if they know potential civil rights plaintiffs may obtain internal investigation records." 2005 WL 3215558 at *4 (internal citation omitted). Plaintiff further cites to *McGee* to argue that "public and media scrutiny over how allegations of police misconduct are handled and investigated by the police department encourages the police department to fairly and honestly investigate and resolve such allegations." *Id.* In stating this, *McGee* ultimately found that the Defendants did not meet their burden for a protective order prohibiting public disclosure of the entirety of the C.R. files. *Id.*

While there is no doubt that Plaintiff's arguments regarding the public interest in the Formal Complaints have merit, "[i]t does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984). Further, while the *McGee* court did endorse the public interest arguments upon which Plaintiff relies and initially found that there was not good cause to prohibit public disclosure of the entire C.R. files, that court did later find such good cause: "the Court found good cause for a protective order provision prohibiting the parties from using or disclosing . . . CR files [Formal Complaints] for any purpose other than that litigation." *See Coffie v. City of Chicago*, 2006 WL 1069132, at *1, and *O'Malley*, No. 07 C 1679, 2008 WL 345607 at *3 (N.D. Ill. Feb. 6, 2008) (citing to *McGee*, No. 04 C 6325, Doc. # 101 (Jan. 9, 2006)).

In addition, the public's interest in materials exchanged during pretrial discovery is not as strong as the public's interest in the materials used as evidence in the judicial

record or at trial. "Pretrial discovery, unlike the trial itself, is usually conducted in private." *O'Malley,* 2008 WL 345607 at *2 (citing Cincinnati Ins. Co., 178 F.3d at 944). On the other hand, "the public interest in access to materials that form the basis of a judicial decision is greater than in materials generated in the discovery process." *Coffie,* 2006 WL 1069132 at *2, citing *Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). Thus, "it is during this pretrial discovery process that a party's interest in maintaining confidentiality of private information is at its strongest." *O'Malley*, 2008 WL 345607, at *2.

*Coffie* specifically addressed the privacy interests of the pretrial discovery phase in the context of a protective order for police officer C.R. files. In *Coffie*, the plaintiff sued the City of Chicago and two Chicago police officers under Section 1983 and brought a *Monell* claim against the city. 2006 WL 1069132, at *1. The defendants in *Coffie* similarly filed a motion for a protective order that sought to limit the public disclosure of C.R. files. *Coffie* found that the plaintiff's opposition to the defendants' motion for a protective order did "not adequately distinguish between the public and press's right of access to judicial decisions and the documents which compromise the bases for those decisions and a litigant's right to disseminate unfiled material that has been obtained during pretrial discovery. *Id.* at *1.

Plaintiff's public interest arguments before this Court also fail to adequately make this distinction. Here, Plaintiff's Response does argue that there is a public interest in what goes on at all stages of a proceeding (citing to *Citizens v. Cincinnati Ins. Co., 178 F.3d at 945*). However, this proposition in *Citizens* was stated "in the context of

criticizing an order that permitted sealing portions of the public record," which is not at issue here. *See Hobley*, 225 F.R.D. at 224.

Further, the plaintiff in *Coffie* also "failed to explain to whom he wished to disseminate the [complaint files] and other related materials and for what purpose[s]" and seemed to request "to have the unlimited ability to disseminate the [complaint files]." *Coffie*, 2006 WL 1069132, at *2. Thus, *Coffie* determined that it could not find, as a general matter, that "plaintiff's counsel in civil rights cases may disseminate unfiled police officer disciplinary information produced during discovery without restriction or limitation." *Id.* at *3. *Coffie,* in granting the defendants' motion for a protective order, further determined that it would handle requests to disseminate such information, either by the plaintiff or a nonparty, on a "case-by-case basis to determine whether dissemination is reasonable in light of all the competing interests." *Id. Coffie* also stated that any individual seeking access or use of the Formal Complaints needed to present the court with "much more information." *Id.*

As in *Coffie*, Plaintiff's intentions or motivations for publicizing the Formal Complaints during pretrial discovery is not clear from the record. Moreover, Plaintiff has offered no alternative approach or proposed protective order regarding the allegedly confidential information at issue in the Formal Complaints. In addition, Plaintiff does not address or distinguish *Coffie* in his Response. The public interest in these documents does not outweigh the privacy interests asserted by Defendants in the pretrial discovery phase given the current record of this action. Accordingly, this Court, as in *Coffie*, cannot find that, as a general matter, Plaintiff can disseminate the Formal

Complaints without any restriction. Therefore, there is good cause for Defendants to produce the Formal Complaints pursuant to the protective order they have proposed.

Plaintiff has argued that a protective order will keep the Formal Complaints "hidden under a veil of secrecy." [DE 152 at 5, ¶ 7]. However, granting Defendants' Motion for Issuance of Protective Order does not mean that Plaintiff will not have the opportunity to potentially "file and thereby publicize information in the [Formal Complaints] at an appropriate time in the course of this litigation." *See Lane v. Salgado*, No. 13 C 3764, 2014 WL 889306, at *2 (N.D. Ill. Mar. 5, 2014). Further, any protective order submitted by the parties in this matter must include language allowing the parties and the public to challenge the determination of any piece of information as confidential.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion for Issuance of Protective Order is **GRANTED**. [DE 151]. Plaintiff shall not disseminate the Formal Complaints beyond this litigation until further order of the Court, and Defendants may redact social security numbers. The parties shall submit a proposed agreed protective order complying with the provisions of this order on or before **October 7, 2021,** for the court's approval.

**SO ORDERED** this 23rd day of September 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
